ORIGINAL



ALAIN C. BALMANNO – 3985
Assistant Attorney General
Assistant Utah Attorney General
160 East 300 South, Sixth Floor
P. O. Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| ALLEN, Weston D., <br><br> Plaintiff, <br><br> v. <br><br> UTAH STATE PRISON; DR. RICHARD M. GARDEN, Medical Administrator; BARRY STONE; Physician Assistant; TERRY JEFFRIES, JR. Physician Assistant; KENNON G. TUBBS, M.D.; RAYMOND MERRILL, Physician Assistant; CARL W. AVERY; Registered Nurse <br><br> Defendants. | **DEFENDANTS MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY** <br><br><br> Case No: 03-CV-173TS <br><br> Judge:  Ted Stewart <br><br> Magistrate Judge:  Samuel Alba |

Defendants Richard M. Garden, Barry Stone, Terry Jeffries, Kenneth G. Tubbs,

Raymond Merrill and Carl W. Avery, through counsel, Alain C. Balmanno, Assistant Utah State

Attorney, submit this *Memorandum in Support of Motion to Dismiss, for Summary Judgment and*

*Qualified Immunity* pursuant to Fed. R. Civ. P. 12(b)(1) and 56(c).



6.      October 5, 1998 blood test done showed slight elevation of LFT results, but no

Hepatitis panel was done at that time.  Hepatitis C testing was not in place at the

USP until 2000. Exhibit 3, ¶ 4 and 11.

7.      March 6, 2002, intake medical screening lists no history of Hepatitis C.  Exhibit

4, Allen 047-48.

8.      March 12, 2002, blood was taken in order to perform testing.  Plaintiff had

complained of rectal bleeding and hemorrhoids.  Exhibit 4, Allen 056-057.

9.      March 15, 2002, due to plaintiff's lab results, a Hepatitis Panel A and B and C

Profile were ordered.  Exhibit 4, Allen 058.

10.     March 18, 2002, plaintiff's blood laboratory tests indicated he was "reactive" for

Hepatitis C.  Exhibit 4, Allen 062.

11.     March 27, 2002, Plaintiff was provided with treatment protocol and literature on

Hepatitis C.  Plaintiff was further advised to follow up if he had any symptoms.

PA Merrill noted that plaintiff was not jaundice on that date.  Exhibit 4, Allen

062.

12.     May 2, 2002, plaintiff requested more pain medications for headaches.  Chris

Abbott, PAC cautioned plaintiff to take only essential medications due to his

Hepatitis C.  Exhibit 4, Allen 069.

13.     May 23, 2002, plaintiff submitted a health case request form requesting treatment

for his Hepatitis C.  Exhibit 4, Allen 073.

14.    May 29, 2002, plaintiff was advised of requirements to be placed on Interferon. Exhibit 4, Allen 074.

15.    June 11, 2002, plaintiff was treated by Dr. Tubbs in the infirmary.  Dr. Tubbs noted at that time that plaintiff had requested an evaluation of his Hepatitis C.  Dr. Tubbs further noted that plaintiff had not had any alteration of LFT (Liver Function Test) since 1998.  Hepatitis C stable at this time.  Dr. Tubbs discussed Interferon protocol and explained plaintiff did not qualify for treatment. Declaration of Dr. Tubbs ¶ 11; Exhibit 4, Allen 075-076.

16.    On July 17, 2002, plaintiff was treated for gastric pain.  At that time, it was noted that plaintiff exhibited no signs of jaundice and that his liver function would be rechecked.  Exhibit 4, Allen 081-083.

17.    From July 17, 2002 through April 21, 2003, plaintiff was seen by medical personnel approximately 114 times, and had no complaints regarding his Hepatitis C.  Exhibit 5, Allen 082-136.

18.    April 21, 2003, plaintiff requested treatment for gastric pain.  During this visit, plaintiff requested treatment for Hepatitis.  It was noted that plaintiff's 12 month check for LFT's was due on May 2, 2003.  It was decided that if plaintiff's LFT's were elevated, a consult for Interferon treatment would be submitted.  Exhibit 4, Allen 137.

19.    May 2, 2003, plaintiff's lab results were reviewed.  It was determined that his LFT's were elevated.  Exhibit 4, Allen 139.

20.    May 7, 2003, plaintiff was reviewed for Interferon treatment. Exhibit 4, Allen 140-141.

21.    June 5, 2003, plaintiff complained of mental health issues.  He reported hearing voices telling him to "commit suicide".  Exhibit 4, Allen 147.

22.    June 9, 2003, plaintiff was scheduled to meet with Pauline Sturdy to discuss Hepatitis C treatment.  Exhibit 4, Allen 148.

23.    June 11, 2003, plaintiff was evaluated for depression.  It was determined that plaintiff's depression was too high to be considered for Interferon treatment. Plaintiff was referred for a psychiatric review.  An independent evaluation by Dr. Grosser showed that Interferon would be too much of a risk to try on Inmate Allen at this time.  Exhibit 4, Allen 149-150.

24.    June 27, 2003, plaintiff was upset about not be placed on Interferon.  He admitted to Clayton Shumway, LCSW that his enzyme levels for his liver did not qualify him for treatment at this time.  Exhibit 4, Allen 155.

25.    July 2, 2003, Dr. Garden further reviewed Dr. Grosser's mental health report on plaintiff and determined that they would try plaintiff on Interferon.  Plaintiff was again provided with the information regarding the Interferon treatments.  Mental health was contacted regarding follow-up for plaintiff's mental health issues while his is on the Interferon.  Exhibit 4, Allen 156.

26.    July 25, 2003, plaintiff received his first Interferon treatment.  Exhibit 4, Allen 162-163.

27.   August 7, 2003, plaintiff reported to Dr. Helfer that he was somewhat more depressed due to Interferon side effects.  Exhibit 4, Allen 165.

28.   Plaintiff did not report or exhibit any other side effects from the Interferon until December 2, 2003.  On that date, Plaintiff requested to have the treatments stopped in six weeks.  Exhibit 4, Allen 196.

29.   January 5, 2004, Plaintiff complained of being depressed and rashes on his body due to his Interferon treatment.  Exhibit 4, Allen 204.

30.   Plaintiff reported to Chris Abbott, PAC on January 6, 2004 that "I hurt all over— all of my joints and all my muscles".  Also complained of itching all over wanted to know when his Interferon treatments would be finished.  Plaintiff was informed his Interferon treatments would be finished on January 21, 2004.  Exhibit 4, Allen 205.

31.   Plaintiff remained on Interferon through January 15, 2004.  Dr. Tubbs assessed Plaintiff on January 15, 2004.  Due to Interferon side effects and lack of further benefit he could receive from the Interferon, plaintiff decided not to continue the full year of treatment.  Exhibit 4, Allen 207-208.

32.   Since January 15, 2004, plaintiff has not complained and/or requested treatment for his Hepatitis C.  Allen 209-215.

## ARGUMENT

1. Standard of evaluation.

Summary judgment is appropriate under Rule 56 (c) against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial. In such a situation, there can be no issue of material facts because a failure of proof on an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A party seeking summary judgment bears the responsibility of informing the District Court of the basis for its motion and the motion should be granted so long as what is before the District Court demonstrates the standard set forth in Rule 56 is satisfied. *United States v. Simons,* 129 F.3d 1386, 1388 (10th Cir. 1997), "[t]o support summary judgment, the movant need only point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law. Summary judgment will then lie if the movant establishes entitlement to judgment as a matter of law, given the uncontroverted operative facts. Factual disputes that are irrelevant, or unnecessary will not be counted. The substantive law of the case determines which facts are material." Id. (Internal quotations and citations omitted.).

2. Plaintiff's claim is moot.

Plaintiff claims he was denied treatment of his Hepatitis C. However the evidence is clear that defendants followed the established protocol, and that plaintiff was ultimately treated for Hepatitis C. Therefore, plaintiff's claim that he has been denied treatment no longer presents a case or controversy and the court should dismiss the complaint pursuant to Fed. R. Civ. P. 12

7

(b) (1), lack of subject matter jurisdiction.

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *McClendon v. City of Albuquerque,* 100 F.3d 863, 867 (10th Cir.1996). "In general a case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt,* 455 U.S. 478, 481, (1982) (quotation marks and citations omitted). "'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'" *Beattie v. United States,* 949 F.2d 1092, 1094 (10th Cir.1991) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495-96, (1974) (alterations omitted)). Likewise, "[i]t is well established that what makes a declaratory judgment action 'a proper judicial resolution of a "case or controversy" rather than an advisory opinion--is [ ] the settling of some dispute which affects the behavior of the defendant toward the plaintiff.' " *Cox v. Phelps Dodge Corp.,* 43 F.3d 1345, 1348 (10th Cir.1994) (quoting *Hewitt v. Helms,* 482 U.S. 755, 761, (1987)). Because plaintiff has received Hepatitis C treatment, his claims are moot.

3. Cruel and Unusual Punishment .

To prove a violation of the Eighth Amendment for failure to provide medical care "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). To establish this type of claim, an inmate must show that his medical needs were serious, and that prison officials were deliberately indifferent to those needs.

*Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).

The deliberate indifference requirement has two components, an objective component requiring that the pain or deprivation be sufficiently serious, and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind. *Perkins v. Kansas Dept. of Corrections*, 165 F3d, 803, 809 (10th Cir. 1999) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991)).  Only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. *Riddle*, 83 F.3d at 1203; *Wilson*, 501 U.S. at 297.  Inadvertent failure to provide adequate medical care does not rise to the level of a constitutional violation. *Riddle* 83 F.3d at 1203.  Neither does conduct amounting to medical malpractice. *Id.*; *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000).  Moreover, mere disagreement with the medical judgment of prison doctors concerning treatment does not support a claim of cruel and unusual punishment. *Olson*, 9 F.3d at 1477.

The facts show that the defendants were not deliberately indifferent to plaintiff's medical condition. Assuming *arguendo* that Hepatitis C is a serious medical condition[1], the evidence establishes that defendants and other prison medical officials followed approved medical protocol in evaluating plaintiff, monitoring his condition, and in explaining to plaintiff that the side effects would be dangerous. Ultimately plaintiff was treated for the Hepatitis C, with predictable side effects, including joint pain and depression, and the treatment had to be discontinued.

---

1 Exhibit 2, the Legislative Fiscal Analysis Report at Allen 245, shows that Hepatitis C is benign in 95% of reported cases.

9

4. Qualified Immunity.

The purpose of qualified immunity is to shield public officials from undue interference with their duties and from potential threats of liability. Qualified immunity shields defendants not only from ultimate liability, but also from the burdens and disruptions associated with trial. It is an immunity from suit, protecting public officials from all the burdens of litigation, including discovery. *Hannula v. City of Lakewood*, 907 F.2d 129, 130 (10th Cir. 1990); *Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001); *Hunter v. Bryant*, 502 U.S. 224, 227-28 (1991); *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001).

Once the affirmative defense of qualified immunity is raised, the burden shifts to the plaintiff to show the immunity is unwarranted. The defense creates a rebuttable presumption that the officers performed their duties properly. *Medina v. Cram,* 252 F.3d 1124, 1128, 1130 (10th. Cir. 2001). Plaintiff bear a heavy two-part burden of showing that, (1) defendants' actions violated a constitutional right, and (2) that the right allegedly violated was clearly established at the time of the facts at issue. *Id.* at 1128; *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996); *Wilson v. Meeks*, 52 F.3d 1547,1552 (10th Cir. 1995); *Saucier*, 121 S. Ct. at 2155.

If the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendants who must prove that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. *Medina*, 252 F.3d at 1128. If the plaintiff fails to satisfy either part of their burden, the Court must grant the defendants qualified

10

immunity. *Medina*, 252 F.3d at 1128, *citing, Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

In this case, although the plaintiff could show that the right to medical care was clearly established, he cannot show that the defendants acted in violation of that constitutional right. The medical record and other evidence establishes that defendants were not deliberately indifferent to plaintiff's medical needs. Therefore defendants are entitled to qualified immunity at this juncture, and plaintiff's *Complaint* should be dismissed with prejudice.

## CONCLUSION

For the reasons developed above, plaintiff's *Complaint* should be dismissed with prejudice. Plaintiff's quarrel with the defendants and the rest of the prison medical staff is nothing more than a disagreement regarding the appropriate course of treatment for his medical condition. Differences over medical treatment do not state claims for deliberate indifference.

DATED this 25th day of February, 2004.

Alain C. Balmanno
Assistant Attorney General
Attorney for Defendants

11

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.